UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

ELIAS C.M.,

          Petitioner,

      v.

WARDEN OF THE GOLDEN STATE
ANNEX DETENTION FACILITY, et al.,

          Respondents.

No. 1:25-cv-02043-TLN-EFB

**ORDER**

This matter is before the Court on Petitioner Elias C.M.'s ("Petitioner") Petition for Writ of Habeas Corpus (ECF No. 1), which this Court has construed as a Motion for Temporary Restraining Order ("TRO") based on Petitioner's brief and the relief requested therein. (ECF No. 4) On December 30, 2025, the Court ordered Respondents to submit a response to Petitioner's request for immediate injunctive relief. (ECF No. 4.) On January 5, 2026, Respondents filed a Motion to Dismiss Petition for Writ of Habeas Corpus and Opposition to Petitioner's Motion for TRO. (ECF No. 5.) The Court construes this filing to be the response this Court ordered Respondents to submit. (ECF No. 4.) On the Court's further Order, Respondents supplemented their opposition with records from Petitioner's A-file and other related documents. (ECF Nos. 9, 10.) On January 8, 2026, Petitioner filed a reply. (ECF No. 7.) For the reasons set forth below, Petitioner's Motion for TRO is GRANTED.

///

1

I.    FACTUAL BACKGROUND[1]

Petitioner is a native and citizen of El Salvador.  (ECF No. 10-7 at 2.)  Petitioner applied for admission to the United States at the Port of Entry in Laredo, Texas on or about July 20, 2021, expressing fear of returning to his home country.  (ECF No. 10-5 at 3.)  After he was interviewed and his records were checked,[2] Petitioner was paroled into the United States and released from custody.  (*Id.* at 3–4.)  Petitioner was placed in the Intensive Supervision Appearance Program ("ISAP").  (ECF No. 10-8 at 3.)

On September 10, 2025, Petitioner was detained by U.S. Immigration and Customs Enforcement ("ICE") when he reported for a scheduled office visit to ISAP.  (*Id.*)  Petitioner was detained without notice or a hearing.  (*Id.*; ECF No. 10-10.)  Prior to his arrest, an immigration investigation was initiated by conducting record checks of ICE's database.  (ECF No. 10-8 at 3.)  That investigation revealed Petitioner was arrested on January 15, 2025 by the Fresno County Sheriff's Office for misdemeanor spousal battery.  (*Id.* at 3–4); Cal. Penal Code § 243(e)(1).  The Government's records state Petitioner "is subject to detention due to [his] recent arrest in Fresno County for violating California Penal Code [§] 243(E)(1)."  (ECF No. 10-8 at 3.)  There is no indication on the record that Petitioner was charged or found guilty of that offense.  (*See id.*)

Petitioner has remained in detention for over three months as the Golden State Annex Detention Facility.  (ECF No. 1 at 2.)  On December 29, 2025, Petitioner filed a petition for writ of habeas corpus.  (ECF No. 1 at 1.)  Petitioner challenges his detention as violating his due process rights and seeks immediate release or a hearing.  (*Id.* at 17.)

II.    STANDARD OF LAW

For a TRO to issue, courts consider whether Petitioner has established "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of

---

[1]    These facts are taken from Petitioner's habeas petition and the records filed by Respondents.  (ECF Nos. 1, 10-1–10-10.)  Respondents do not dispute Petitioner's recitation of facts.  (*See generally* ECF No. 5.)

[2]    The Government's records indicate that in 2019, Petitioner entered the United States unlawfully and was apprehended, processed for expedited removal, and deported.  (ECF Nos. 10-1–10-4; ECF No. 10-5 at 3.)

2

preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  Petitioner must "make a showing on all four prongs" of the *Winter* test.  *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).  The Court may weigh Petitioner's showing on each of the *Winter* factors using a sliding-scale approach.  *Id.*  A stronger showing on the balance of the hardships may support issuing a TRO even where there are "serious questions on the merits . . . so long as the [petitioner] also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest."  *Id.*  Simply put, if "serious questions going to the merits were raised [then] the balance of hardships [must] tip[ ] sharply" in Petitioner's favor in order to succeed in a request for a TRO.  *Id.* at 1134–35.

**III.    ANALYSIS**

The Court considers each of the *Winter* elements with respect to Petitioner's motion.

A.    Likelihood of Success on the Merits

Petitioner argues that his continued detention without a hearing violates his due process rights.  (ECF No. 1 at 16–17.)  In opposition, Respondents argue Petitioner is not entitled to a bond hearing because he has only been detained for three months and there is no reason to believe his removal proceedings will become indefinite or potentially permanent.  (ECF No. 5 at 2–4.)  Respondents request that even if Petitioner's detention offends due process, the appropriate relief is a bond hearing and not immediate release.  (*Id.* at 4.)

The Fifth Amendment Due Process Clause prohibits government deprivation of an individual's life, liberty, or property without due process of law.  *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017).  The Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status.  *Zadvydas*, 533 U.S. at 693 ("[T]he Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent.").  These due process rights extend to immigration proceedings, including deportation proceedings.  *Id.* at 693–94; *see Demore v. Kim*, 538 U.S. 510, 523 (2003).

///

3

Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

### a)  Liberty Interest

"Freedom from imprisonment — from government custody, detention, or other forms of physical restraint — lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. July 24, 2025). To determine whether an individual's specific conditional release rises to the level of a protected liberty interest, courts have "compar[ed] the specific conditional release in the case before them with the liberty interest in parole as characterized by *Morrissey*." *R.D.T.M. v. Wofford*, No. 1:25-CV-01141-KES-SKO, 2025 WL 2617255, at *3 (E.D. Cal. Sept. 9, 2025).

Here, Petitioner gained a protected liberty interest in his continued freedom when he was released on parole in 2021. (ECF No. 10-5 at 4.) Under *Morrissey*, this release was an implied promise that Petitioner would not be re-detained during the pendency of his immigration proceedings if he abided by the terms of his release. There is no indication Petitioner violated those terms. (*See generally* ECF No. 10-8.) Indeed, the Government's records show Petitioner was detained because of his prior arrest in Fresno County, not for violating the conditions of his release. (*Id.*) As this Court has found previously, along with many other courts in this district when confronted with similar circumstances, Petitioner has a clear interest in his continued freedom as he awaits the outcome of his immigration proceedings. *See, e.g.*, *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (noting the Government's actions in allowing petitioner to remain in the community for over five years strengthened petitioner's liberty interest).

///

4

Petitioner's prior arrest for misdemeanor spousal battery does not alter this Court's analysis. The Government's records and opposition do not identify a statutory basis for his detention. (*See generally* ECF No. 5; ECF No. 10-8 at 3.) Nor do they explain or provide authority validating the statement that Petitioner "is subject to detention due to [his] recent arrest in Fresno County for violating California Penal Code [§] 243(E)(1)," as a lawful conclusion. (ECF No. 10-8 at 3.) While 8 U.S.C. § 1226(c) provides for the detention of certain noncitizens who have been arrested, charged, convicted, or sentenced of certain offenses, none of those provisions apply to Petitioner. Subsections (1)(A) through (D) of the statute only apply to individuals who have been convicted or sentenced of certain offenses or have engaged in or are likely to engage in terrorist activity. 8 U.S.C. § 1226(c)(1)(A)–(D) (incorporating 8 U.S.C. §§ 1182(a)(3)(B), 1227(a)(4)(B)). Subsection (1)(E) does not apply because Petitioner was not arrested for "acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person." 8 U.S.C. § 1226(c)(1)(E)(ii). Relevant here, "serious bodily injury" is defined to "have the meanings given such terms in the jurisdiction in which the acts occurred." *Id.* § 1226(c)(2). Under California law, battery involving "serious bodily injury" violates Cal. Penal Code § 243(d). This is a different offense from that for which Petitioner was arrested, Cal. Penal Code § 243(e)(1), which does not contain an element of serious bodily injury. Petitioner is therefore not subject to mandatory detention by reason of his prior arrest. *See Guzman v. Andrews*, No. 1:25-CV-01015-KES-SKO, 2025 WL 2617256, at *3 (E.D. Cal. Sept. 9, 2025) (finding petitioner's detention governed by the general process for arresting and detaining noncitizens under 8 U.S.C. § 1226(a) where petitioner had been convicted under Cal. Penal Code § 243(e)(1)); *Roa v. Albarran*, No. 25-CV-07802-RS, 2025 WL 2732923, at *1, 5 (N.D. Cal. Sept. 25, 2025) (same). Petitioner has a liberty interest in his release from immigration detention protected by the Due Process Clause.

### b) Procedural Due Process

Having found a protected liberty interest, the Court examines what process is necessary to ensure any deprivation of that interest accords with the Constitution. The Court considers three

5

factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).  Due process rights in the immigration context "must account for the government's countervailing interests in immigration enforcement." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022).

As to the first *Mathews* factor — Petitioner's private interest — Petitioner has a substantial private interest in remaining free from detention.  Petitioner was released on parole approximately four and a half years ago, has a valid work permit, Class A driver's license, and meaningful employment.  (ECF No. 7 at 1.)  Petitioner's children, ages 3 and 4, were born here and are United States citizens.  (*Id.*)  Despite this, Petitioner has now been detained for over three month without notice or an opportunity to be heard.  Accordingly, this factor weighs in favor of finding Petitioner's private interest has been impacted by his detention.  *See Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025) (finding similarly).

As to the second *Mathews* factor — the risk of erroneous deprivation — the Court finds the risk here is considerable where Petitioner has received virtually no procedural safeguards such as a bond or custody redetermination hearing.  *A.E. v. Andrews*, No. 1:25-CV-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025).  This is particularly so in light of the fact that Petitioner was previously interviewed and released on parole.  (ECF No. 10-5 at 4; ECF No. 10-8 at 3.)  Though the immigration court may ultimately find circumstances have changed following Petitioner's arrest over a year ago, this Court expressly makes no finding as to whether Petitioner now presents a danger to the community or flight risk.  Indeed, the potential change in circumstances highlights the necessity of procedural safeguards where a neutral decisionmaker can consider all facts and evidence to determine whether Petitioner's detention is now justified.  *See Doe*, 787 F. Supp. 3d at 1094 (noting the same); *see also R.D.T.M. v. Wofford*, No. 1:25-CV-01141-KES-SKO, 2025 WL 2686866, at *6 (E.D. Cal. Sept. 18, 2025) ("Civil immigration

6

detention, which is 'nonpunitive in purpose and effect,' is justified when a noncitizen presents a risk of flight or danger to the community.").

As to the third *Mathews* factor, the government's interest in detaining Petitioner without a hearing before a neutral decisionmaker is negligible. *R.D.T.M.*, 2025 WL 2686866 at *6. Where removal is not imminent under a final order of removal, "[t]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by [ ] bond or alternative conditions." *Hernandez*, 872 F.3d at 994. Petitioner's asylum application is ongoing, there is no removal order, and Petitioner was previously found suitable for parole. (ECF No. 1 at 5; ECF No. 10-8 at 2–4.) While Petitioner was arrested for a misdemeanor last year, the Government has provided no facts on the surrounding circumstances and there is no indication he was ever charged or found guilty. The Government does not claim Petitioner violated the terms of his parole or that there is a change in circumstances justifying his detention. Therefore, on this record, the Court can find no legitimate interest for Respondents to continue detaining Petitioner.

Finally, the cost and time of procedural safeguards are minimal. Notice and custody determination hearings are routine processes for Respondents, and any delay in re-detention (if justified) for time to provide notice and a hearing would be minimal. It would also be less of a fiscal and administrative burden for the Government to return Petitioner home to await a determination on his immigration and asylum proceedings than to continue to detain him. *See Diaz v. Kaiser*, No. 3:25-CV-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) ("[T]he Ninth Circuit has recognized that the costs to the public of immigration detention are staggering.").

On balance, this Court finds the *Mathews* factors demonstrate Petitioner was entitled to notice and a hearing to determine whether detention was warranted. Respondents did not provide either. Accordingly, with respect to his procedural due process claim, Petitioner has shown he is likely to succeed on the merits.

        B.     <u>Irreparable Harm</u>

Petitioner has also established he will suffer irreparable harm in the absence of a TRO.

7

The Ninth Circuit recognizes "irreparable harms imposed on anyone subject to immigration detention," including "subpar medical and psychiatric care in ICE detention facilities, the economic burdens imposed on detainees and their families as a result of detention, and the collateral harms to [family.]" *Hernandez*, 872 F.3d at 995.  Such harm is present here.  (ECF No. 1 at 5–6.)  Without relief, Petitioner faces the prospect of significant additional time in detention and continued harm while he awaits a determination on his immigration and asylum proceedings. Moreover, "[i]t is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).  "When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Warsoldier v. Woodford*, 418 F.3d 989, 1001–02 (9th Cir. 2005); *see also Arevalo v. Hennessy*, 882 F.3d 763, 767 (9th Cir. 2018) ("Deprivation of physical liberty by detention constitutes irreparable harm.").  In addition to harms imposed by his continued immigration detention, Petitioner has shown he is likely to succeed on the merits of his constitutional claim. The Court thus finds Petitioner has demonstrated irreparable harm.

### C.    Balance of Equities and Public Interest

As to the final two *Winter* factors, "[w]hen the government is a party, the analysis of the balance of the hardships and the public interest merge." *Nat'l Urban League v. Ross*, 484 F. Supp. 3d 802, 807 (N.D. Cal. 2020) (citing *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014)).  The Court finds these factors also favor Petitioner.  The Government "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. U.S. Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir. 1983).  Rather, "it is always in the public interest to prevent the violation of a party's constitutional rights." *Melendres*, 695 F.3d at 1002.  Additionally, and as noted above, "the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering." *Diaz v. Kaiser*, No. 3:25-CV-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) (internal citation omitted).  In sum, the last two *Winter* factors also weigh in Petitioner's favor.

Having found Petitioner has satisfied each of the *Winter* factors, the Court GRANTS

Petitioner's Motion for a TRO and orders Petitioner's immediate release on the same terms as he was released prior to his detention. *See Yang v. Kaiser*, No. 2:25-cv-02205-DAD-AC, 2025 WL 2791778, at *11 (E.D. Cal. Aug. 20, 2025) (status quo ante is "the last uncontested status which preceded the pending controversy.")

**IV.   CONCLUSION**

IT IS HEREBY ORDERED:

1. Petitioner's Motion for Temporary Restraining Order is GRANTED (ECF No. 1);

2. The bond requirement of Federal Rule of Civil Procedure 65(c) is waived. Courts regularly waive security in cases like this one. *See Diaz v. Brewer*, 656 F.3d 1008, 1015 (9th Cir. 2011);

3. Petitioner shall be RELEASED IMMEDIATELY from Respondents' custody;

4. Respondents are ENJOINED and RESTRAINED from re-arresting or re-detaining Petitioner absent compliance with constitutional protections, including seven-days' notice and a hearing before a neutral fact-finder where Respondents show: (a) material changed circumstances demonstrate a significant likelihood of Petitioner's removal in the reasonably foreseeable future, or (b) Respondents demonstrate by clear and convincing evidence that Petitioner poses a danger to the community or a flight risk. At any such hearing, Petitioner shall be allowed to have counsel present.

5. Respondents are ordered to SHOW CAUSE why this Court should not convert this temporary restraining order into a preliminary injunction requiring Respondents to continue to abide by this Court's order. Respondents shall file responsive papers by **Friday, January 23, 2026**. Respondents' response shall inform the Court whether Respondents request the Court enter final judgment granting the petition for writ of habeas corpus on the merits if the Court is inclined to grant a preliminary injunction. Petitioner may file a reply, if any, by **Wednesday, January 28, 2026**. The parties shall indicate in their briefing whether they waive a hearing. Fed. R. Civ. P. 65(b)(3). The Court will consider any stipulation and proposed order filed by the parties if they agree to a less demanding briefing schedule.

9

6. Respondents are hereby notified of their right to apply to the Court for modification or dissolution of the TRO on two days' notice to Petitioner. Fed. R. Civ. P. 65(b)(4).

7. The matter is not set for a hearing, though the Court may set one should it later be determined that a hearing is necessary.

IT IS SO ORDERED.

Date: January 16, 2026

_____
TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE

10